# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| CHERYL FANNIN and EVEE MALONE, on behalf of themselves and on behalf of all other similarly situated individuals,<br><br>    Plaintiffs,<br><br>v.<br><br>MARQUIS SOFTWARE SOLUTIONS, INC. and WESBANCO BANK, INC.,<br><br>    Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Cheryl Fannin and Evee Malone ("Plaintiffs"), individually and on behalf of all other similarly situated individuals (the "Class" or "Class Members," as defined below), by and through their undersigned counsel, file this Class Action Complaint against Marquis Software Solutions, Inc. ("Marquis") and WesBanco Bank, Inc. ("WesBanco") (together, "Defendants"), and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiffs allege the following based on personal knowledge of facts, upon information and belief, and based on the investigation of her counsel as to all other matters.

# I.    <u>NATURE OF THE ACTION</u>

1.      Plaintiffs bring this class action lawsuit against Defendants for their failure to protect and safeguard Plaintiffs' and the Class's highly sensitive personally identifiable information ("PII").

2.      Defendant Marquis Software Solutions, Inc. is a software firm that provides "marketing and compliance solutions" to "700+ banks and credit unions[.]"[1]

3.      Defendant WesBanco Bank Inc. is a bank in Ohio and West Virginia that provides personal and business loans, investment services, and other financial services.[2]

4.      On or around August 14, 2025, cybercriminals hacked into the network systems of WesBanco service provider and third-party vendor, Marquis Software Solutions, and stole Plaintiffs' and Class Members' sensitive PII stored therein, including their full names, addresses, phone numbers, Social Security numbers, financial account information, and dates of birth ("Private Information"), causing widespread injuries and damages to Plaintiffs and Class Members ("Data Breach" or "Breach").

5.      As a result of the Data Breach, WesBanco's customers, including Plaintiffs, were impacted by the Breach. Now, Plaintiffs' and the Class's PII is in the hands of cybercriminals who will undoubtedly use their PII for nefarious purposes for the rest of their lives.

---

[1] About Us, MARQUIS, https://gomarquis.com/who-we-are/about-us (last visited Dec. 3, 2025).
[2] About, WesBanco, https://www.wesbanco.com/ (last visited Dec. 20, 2025).

6.     WesBanco is a client of Marquis and contracted Marquis to provide software and data management and analytics services using Plaintiffs' and Class Members' Private Information. WesBanco offers a wide range of services including various accounts, loans, and credit cards. WesBanco serves customers in Wisconsin, Michigan, and Illinois.

7.     Plaintiffs and Class Members are current and former customers of WesBanco, who received banking services from WesBanco prior to the Data Breach. As a condition of obtaining WesBanco services, Plaintiffs and Class members were required to entrust their sensitive, non-public Private Information to WesBanco and through WesBanco, to Marquis. Marquis in turn stored and used Plaintiffs' and Class Members' Private Information to provide their contracted services to WesBanco.

8.     Businesses that store and maintain consumers' Private Information, like WesBanco and Marquis, owe the individuals to whom the information relates a duty to adopt reasonable measures to protect it from unauthorized disclosures and unauthorized third parties. This duty arises under contract, statutory and common law, industry standards, representations made to Plaintiffs and Class Members, and because it is foreseeable that the exposure of Private Information to unauthorized persons, and especially hackers, will harm the affected individuals, including to the invasion of their private information and financial matters.

9.     In providing their Private Information to WesBanco, and Marquis through WesBanco, Plaintiffs and the Class Members reasonably expected these sophisticated business entities to keep their Private Information confidential and secured from unauthorized disclosures, to use this information for business purposes only, and to

disclose it only as authorized. WesBanco and Marquis failed to do so, resulting in the unauthorized disclosure of Plaintiffs' and Class Members' Private Information in the Breach.

10.    Despite discovering the Breach on August 14, 2025, WesBanco has delayed alerting victims of the Data Breach. Upon information and belief, WesBanco has yet to finish sending notice of the Breach to affected individuals.

11.    WesBanco failed to adequately protect Plaintiffs' and Class Members' Private information and failed to ensure that its vendor Marquis would maintain adequate safeguards to protect WesBanco customers' Private Information.

12.    Upon information and belief, due to WesBanco and Marquis negligence, cybercriminals have accessed and obtained everything they need to commit identity theft and wreak havoc on the financial and personal lives of thousands of individuals.

13.    Now, and for the rest of their lives, Plaintiffs and the Class Members will have to deal with the danger of identity thieves possessing and misusing their Private Information. Even those Class Members who have yet to experience identity theft have to spend time responding to the Breach and are at an immediate and heightened risk of all manners of identity theft as a direct and proximate result of the Data Breach. Plaintiffs and Class Members have incurred and will continue to incur damages in the form of, among other things, identity theft, attempted identity theft, lost time and expenses mitigating harms, increased risk of harm, damaged credit, deprivation of the value of their Private Information, loss of privacy, and/or additional damages as described below.

14.     Hackers targeted and obtained Plaintiffs' and Class Members' Private Information because of the data's value in exploiting and stealing their identities. As a direct and proximate result of Defendants' inadequate data security and breaches of their duties to handle Private Information with reasonable care, Plaintiffs' and Class Members' Private Information was accessed by cybercriminals and exposed to an untold number of unauthorized individuals. The present and continuing risk to Plaintiffs and Class Members as victims of the Data Breach will remain for their respective lifetimes.

15.     In sum, Plaintiffs and the Class will face an imminent risk of fraud and identity theft for the rest of their lives because: (i) Defendants failed to protect Plaintiffs' and the Class's Private Information, allowing a large and preventable Data Breach to occur; (ii) the cybercriminals who perpetrated the Breach accessed Private Information that they will sell on the dark web (if they have not already) because that is the *modus operandi* of cybercriminals who perpetrate breaches such as this; and (iii) Defendants failed to timely notify Plaintiffs and the Class of the Data Breach.

16.     Plaintiffs bring this action individually and on behalf of the Class, seeking compensatory damages, punitive damages, nominal damages, restitution, and injunctive and declaratory relief, reasonable attorney fees and costs, and all other remedies this Court deems proper.

## II.     THE PARTIES

17.     Plaintiffs **Cheryl Fannin** is an individual domiciled in New London, Ohio. Plaintiff Fannin is a customer of WesBanco. WesBanco collected, stored, and maintained Plaintiff Fannin's Private Information as part of its business practices and provided

5

Plaintiff Fannin's Private Information to their third-party vendor Marquis. Upon information and belief, Plaintiff Fannin's Private Information was accessed and exfiltrated in the Data Breach and Plaintiff Fannin is therefore a victim of the Breach.

18.     Plaintiffs **Evee Malone** is an individual domiciled in East Liverpool, Ohio. Plaintiff Malone is a customer of WesBanco. WesBanco collected, stored, and maintained Plaintiff Malone's Private Information as part of its business practices and provided Plaintiff Malone's Private Information to their third-party vendor Marquis. Upon information and belief, Plaintiff Malone's Private Information was accessed and exfiltrated in the Data Breach and Plaintiff Malone is therefore a victim of the Breach.

19.     Defendant **WesBanco Bank Inc.** is a corporation in West Virginia with its principal place of business at 1 Bank Plaza, 7th Floor, Wheeling, West Virginia 26003. The agent for service is James C. Gardill and may be served at 1 Bank Plaza, 7th Floor, Wheeling, West Virginia 26003

20.     Defendant **Marquis Software Solutions, Inc**. is a corporation incorporated in Texas with its principal place of business at 6509 Windcrest Drive, Suite 170, Plano, Texas 75024. The registered agent for service of process is CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

### III.     JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than one hundred

putative Class Members, and minimal diversity exists because Plaintiffs and Defendant Marquis are citizens of different states.

22.     This Court has personal jurisdiction over Defendants because Marquis is headquartered and has its principal place of business in the Sherman Division of the Eastern District of Texas, and because both Marquis and WesBanco regularly conduct business in Texas, have sufficient minimum contacts in Texas, and purposely availed themselves to the Courts in this District.

23.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) because the principal office of Marquis is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    Defendants and their Collection of Plaintiffs' and the Class's PII.

24.     WesBanco offers a wide range of services including various accounts, loans, and credit cards. WesBanco serves customers in West Virginia, Ohio, Pennsylvania, Kentucky, Maryland, and Indiana.

25.     As part of their business practices, WesBanco contracted Marquis for software and data management and analytics services. In the course of WesBanco contract with Marquis, WesBanco provided Marquis with Plaintiffs' and Class Members' Private Information.

26.     Plaintiffs and Class Members are current and former customers of WesBanco. As a condition of receiving WesBanco services, Plaintiffs and Class Members

were required to provide WesBanco with their sensitive and non-public Private Information, which WesBanco shared with Marquis.

27.    As part of their business practices, Defendants acquire a significant amount of highly sensitive Private Information from their customers, including the acquisition of the PII of Plaintiffs and Class Members. Without the Private Information of Plaintiffs and Class Members, Defendants would be unable to conduct business and generate revenue.

28.    It is estimated that WesBanco annual revenue is over $587 million per year. In other words, WesBanco could have afforded to implement adequate data security prior to the Breach and ensure that their vendor Marquis had the adequate security systems to protect Plaintiffs' and Class Members' Private Information.

29.    Defendants obtained, collected, used, and derived a benefit from the Private Information of Plaintiffs' and Class Members. Defendants use the Private Information they collect to provide services, making a profit therefrom. Defendants would not be able to obtain revenue if not for the acceptance and use of Plaintiffs' and the Class's Private Information.

30.    Defendants used Plaintiffs' and Class Members' Private Information to operate their business and derive economic benefits, including for analytics and marketing purposes supported by the third-party vendor Marquis, and could not operate their business without that data. As WesBanco Privacy Policy recognizes that "Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect,

8

share, and protect your personal information."[3]

31.    In exchange for receiving Plaintiffs' and Class Members' Private Information, Defendants promised to safeguard the sensitive and confidential data, to use it only for authorized and legitimate purposes, and to delete such information from their systems once there was no longer a need to maintain it.

32.    By collecting Plaintiffs' and the Class's Private Information, Defendants assumed legal and equitable duties to Plaintiffs and the Class to protect and safeguard their Private Information from unauthorized access and intrusion.

33.    Defendants recognized they had a duty to use reasonable measures to protect the Private Information that it collected and maintained.

34.    WesBanco owed a duty to protect Plaintiffs and Class Members from the harm that WesBanco third-party vendor's insufficient data security and the consequential exposure of Private Information would cause, because such harm was foreseeable and reasonably preventable.

35.    WesBanco knew Marquis was storing valuable, sensitive Private Information and that as a result, Marquis's systems would be an attractive target for cybercriminals.

36.    WesBanco also knew that any breach of Marquis's network and exposure of the data stored therein would result in the increased risk of identity theft and fraud for the tens of thousands of individuals whose Private Information was compromised, as well as intrusion into their private and sensitive financial matters.

---

[3] *Privacy Notice*, WesBanco (May 2016), https://www.wesbanco.com/privacy-notice/.

37.    WesBanco's duty to protect Plaintiffs and Class Members from the foreseeable risk of injury that inadequate data protection and unauthorized exposure of their Private Information would case obligated WesBanco to require and ensure their vendors had implement reasonable practices to keep Plaintiffs' and Class Members' sensitive Private Information confidential and securely maintained, used and disclosed it for necessary and authorized purposes only, deleted the data from network systems or applications when no longer necessary for legitimate business purposes, and trained employees on reasonable cybersecurity red flags and protection techniques.

38.    The PII Defendants shared with Marquis, which Marquis stored on their network systems when the Data Breach occurred, including the unencrypted Private Information of Plaintiffs and Class Members.

39.    Defendants negligently failed to secure Plaintiffs' and Class Members' Private Information and ensure that the third-party vendor, Marquis, had the adequate safeguards to protect Plaintiffs' and Class Members' Private Information.

**B.  The Data Breach.**

40.    On or around November 26, 2025, Marquis alerted the New Hampshire Attorney General's Office of the Breach in a Notice of Data Breach, which reads in part:

**What Happened**
On August 14, 2025, we identified suspicious activity on our network and determined that it was the result of a cybersecurity incident. Upon learning of the incident, we immediately launched an investigation and engaged appropriate cybersecurity experts to assist. We also promptly notified law enforcement. Our investigation determined that an unauthorized third party accessed our network and may have accessed and acquired certain files from our systems. Importantly, your financial institution's internal systems were

not impacted; the incident was limited to Marquis' environment.

**What Information Was Involved**
We reviewed the contents of the copied files to determine if they contained any personal information. On October 27, 2025, we determined that the following data of yours was included in the copied files: < >. At this time, we have no evidence of the misuse, or attempted misuse, of personal information as a result of this incident.

41.     Despite Defendants' investigation of the Data Breach concluding in October 2025, Defendants failed to timely notify Plaintiffs and Class Members of the Data Breach.

42.     Omitted from their statement and notice letters were the details of the root cause of the Data Breach, the identity of the cybercriminals who perpetrated the Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does not occur have not been shared with regulators or Plaintiffs and Class members, who retain a vested interest in ensuring that their information remains protected.

43.     Additionally, the Notice of Data Breach omitted the root cause of the Breach, the perpetrators that accessed and exfiltrated Private Information, and critical facts surrounding the Breach.

44.     The Notice of Data Breach amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiffs and Class Members of the Data Breach's critical facts. Without these details, Plaintiffs' and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished

45.     By collecting, storing, and maintaining the PII of Plaintiffs and Class Members, Defendants owed a duty to Plaintiffs and Class Members to protect and safeguard their Private Information from unauthorized disclosures.

46.    Plaintiffs' and Class Members' Private Information was targeted, accessed, and stolen by cybercriminals in the Data Breach. Defendants' deficient security for customers' data caused and allowed criminals to target and take files containing Plaintiffs' and Class Members' inadequately protected, unencrypted Private Information from WesBanco third-party vendor's possession through the Data Breach.

47.    Because Defendants had a duty to protect Plaintiffs' and Class Members' Private Information, Defendants should have known through readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information. Thus, WesBanco had a duty to ensure that their customers' Private Information, stored with their vendor Marquis, was secured and protected from unauthorized disclosures to third parties.

48.    WesBanco could and should have prevented this Data Breach by ensuring the files and servers containing Plaintiffs' and Class Members' Private Information were properly secured and encrypted but failed to do so.

49.    Marquis could and should have prevented this Data Breach by protecting Plaintiffs' and Class Members' Private Information through industry standard safeguards.

50.    Additionally, WesBanco could have prevented this Data Breach by examining Marquis's cybersecurity protocols and ensuring vulnerabilities were identified and addressed and reasonable safeguards were continuously maintained, but failed to do so

51.    Plaintiffs further believes that their Private Information and that of Class Members, was subsequently sold on the dark web following the Data Breach, as that is the

*modus operandi* of cybercriminals that commit cyber-attacks of this type.

52.     All in all, Defendants failed to take the necessary precautions required to safeguard and protect Plaintiffs' and Class Members' Private Information from unauthorized access and exploitation.

53.     Defendants' actions represent a flagrant disregard of the rights of Plaintiffs and the Class, both as to privacy and property.

### C.     Cybercriminals Have Used and Will Continue to Use Plaintiffs' and the Class's PII to Defraud Them.

54.     PII is of great value to hackers and cybercriminals, and the data stolen in the Data Breach can and will be used in a variety of ways by criminals to exploit Plaintiffs and the Class Members and to profit from their misfortune.

55.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[4]

56.     For example, with the PII stolen in the Data Breach, including Social Security numbers, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other

---

[4] *Facts + Statistics: Identity Theft and Cybercrime*, INSURANCE INFO. INST., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

harmful forms of identity theft.[5] These criminal activities have and will result in devastating financial and personal losses to Plaintiffs and the Class Members.

57.    Social security numbers are particularly sensitive pieces of personal information.  As the Consumer Federation of America explains:

> **Social Security number.** *This is the most dangerous type of personal information in the hands of identity thieves* because it can open the gate to serious fraud, from obtaining credit in your name to impersonating you to get medical services, government benefits, your tax refunds, employment – even using your identity in bankruptcy and other legal matters. It's hard to change your Social Security number and it's not a good idea because it is connected to your life in so many ways.[6]

58.    PII is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it for years.[7]

59.    This was a financially motivated Breach, as the only reason the cybercriminals go through the trouble of running targeted cyberattacks against companies like Marquis is to get ransom money and/or information that they can monetize by selling on the black market for use in the kinds of criminal activity described herein.

---

[5] *See, e.g.*, Christine DiGangi, *What Can You Do with a Stolen Social Security Number*, CREDIT.COM (June 29, 2020), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[6] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/ (emphasis added).

[7] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, available at https://www.gao.gov/products/gao-07-737.

60.     Indeed, a social security number, date of birth, and full name can sell for $60 to $80 on the digital black market.[8]

61.     "[I]f there is reason to believe that your personal information has been stolen, you should assume that it can end up for sale on the dark web."[9]

62.     These risks are both certainly impending and substantial. As the Federal Trade Commission ("FTC") has reported, if hackers get access to PII, ***they will use it***.[10]

63.     Hackers may not use the information right away, but this does not mean it will not be used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information ***may continue for years***. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[11]

64.     For instance, with a stolen social security number, which is part of the PII compromised in the Data Breach, someone can open financial accounts, get medical care,

---

[8] Michael Kan, *Here's How Much Your Identity Goes for on the Dark Web* (Nov. 15, 2017), https://www.pcmag.com/news/heres-how-much-your-identity-goes-for-on-the-dark-web.

[9] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

[10] Ari Lazarus, *How fast will identity thieves use stolen info?*, MILITARY CONSUMER (May 24, 2017), https://www.militaryconsumer.gov/blog/how-fast-will-identity-thieves-use-stolen-info.

[11] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (July 5, 2007), available at https://www.gao.gov/products/gao-07-737.

file fraudulent tax returns, commit crimes, and steal benefits.[12]

65.    Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting themselves in the future.[13]

66.    The full scope of the harm has yet to be realized. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used.

67.    Plaintiffs and Class Members will need to pay for their own identity theft protection and credit monitoring for the rest of their lives due to Defendants' gross negligence.

68.    Furthermore, identity monitoring only alerts someone to the fact that they have already been the victim of identity theft (*i.e.*, fraudulent acquisition and use of another person's PII)—it does not prevent identity theft.[14]  Nor can an identity monitoring service remove personal information from the dark web.[15]

---

[12] *See, e.g.*, Christine DiGangi, *What Can You Do with a Stolen Social Security Number*, CREDIT.COM (June 29, 2020), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[13] *Guide for Assisting Identity Theft Victims*, FEDERAL TRADE COMMISSION (Sept. 2013), *available at* https://www.global-screeningsolutions.com/Guide-for-Assisting-ID-Theft-Victims.pdf.

[14] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, CNBC (Nov. 30, 2017, 9:00 AM), https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-cost.html.

[15] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know.

69.     "The people who trade in stolen personal information [on the dark web] won't cooperate with an identity theft service or anyone else, so it's impossible to get the information removed, stop their sale, or prevent someone who buys it from using it."[16]

70.     As a direct and proximate result of the Data Breach, Plaintiffs and the Class have been damaged and have been placed at an imminent, immediate, and continuing increased risk of harm from continued fraud and identity theft. Plaintiffs and the Class must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

71.     Even more seriously is the identity restoration that Plaintiffs and other Class Members must go through, which can include spending countless hours filing police reports, filling out IRS forms, Federal Trade Commission checklists, Department of Motor Vehicle driver's license replacement applications, and calling financial institutions to cancel fraudulent credit applications, to name just a few of the steps Plaintiffs and the Class must take.

72.     Plaintiffs and the Class have or will experience the following concrete and particularized harms for which they are entitled to compensation, including:

    a.  Actual identity theft;

---

[16] *Id.*

17

b.  Trespass, damage to, and theft of their personal property including PII;

c.  Improper disclosure of their PII;

d.  The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

e.  Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cyber criminals have their PII;

f.  Ascertainable losses in the form of time taken to respond to identity theft and attempt to restore identity, including lost opportunities and lost wages from uncompensated time off from work;

g.  Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

h.  Ascertainable losses in the form of deprivation of the value of Plaintiffs' and Class Members' Private Information for which there is a well-established and quantifiable national and international market;

i.  The loss of use of and access to their credit, accounts, and/or funds;

j.  Damage to their credit due to fraudulent use of their PII; and/or

k.  Increased cost of borrowing, insurance, deposits, and the inability to secure more favorable interest rates because of a reduced credit score.

73.    Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which remains in the possession of WesBanco and Marquis, is protected from further breaches by the implementation of industry standard security

18

measures and safeguards. Defendants have shown themselves wholly incapable of protecting Plaintiffs' and the Class's Private Information.

74.    Plaintiffs and Class Members also have an interest in ensuring that their Private Information that was provided to Defendants is removed from all Defendants' servers, systems, and files.

75.    Defendants knew or should have known of the inherent risks in collecting and storing Private Information and the critical importance of providing adequate security for it.

76.    At Defendants' suggestion, Plaintiffs and the Class are desperately trying to mitigate the damage that Defendants has caused them.

77.    As financial institutions and third-party vendors in possession of consumers' Private Information, Defendants knew, or should have known, the importance of safeguarding the Private Information entrusted to them by Plaintiffs and Class Members and of the foreseeable consequences if vendor's network systems were breached, like Marquis. Such consequences include the significant costs imposed on Plaintiffs and Class Members due to a breach. Nevertheless, Defendants failed to implement or follow reasonable cybersecurity measures to protect against the Data Breach

78.    Given the kind of Private Information Marquis made accessible to hackers, however, Plaintiffs and the Class are certain to incur additional damages. Because identity thieves have their PII, Plaintiffs and all Class Members will need to have identity theft monitoring protection for the rest of their lives. Some may even need to go through the

long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with a new number.[17]

79.    The risk of harms to Plaintiffs and Class Members were reasonably foreseeable and Defendants knew or should have known of these foreseeable risks of harm in the event of a breach.

80.    None of this should have happened because the Data Breach was entirely preventable.

**D.    Defendants were Aware of the Risk of Cyberattacks.**

81.    Data security breaches have dominated the headlines for the last two decades. And it doesn't take an IT industry expert to know it. The general public can tell the names of some of the biggest cybersecurity breaches: Target,[18] Yahoo,[19] Marriott International,[20] Chipotle, Chili's, Arby's,[21] and others.[22]

---

[17] *What happens if I change my Social Security number*, LEXINGTON LAW (Aug. 10, 2022), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.

[18] Michael Kassner, *Anatomy of the Target Data Breach: Missed Opportunities and Lessons Learned*, ZDNET (Feb. 2, 2015), https://www.zdnet.com/article/anatomy-of-the-target-data-breach-missed-opportunities-and-lessons-learned/.

[19] Martyn Williams, *Inside the Russian Hack of Yahoo: How They Did It*, CSOONLINE.COM (Oct. 4, 2017), https://www.csoonline.com/article/3180762/inside-the-russian-hack-of-yahoo-how-they-did-it.html.

[20] Patrick Nohe, *The Marriot Data Breach: Full Autopsy*, THE SSL STORE: HASHEDOUT (Mar. 22, 2019), https://www.thesslstore.com/blog/autopsying-the-marriott-data-breach-this-is-why-insurance-matters/ (last visited Oct. 9, 2023).

[21] Alfred Ng, *FBI Nabs Alleged Hackers in Theft of 15M Credit Cards from Chipotle, Others*, CNET (Aug. 1, 2018, 12:58 PM), https://www.cnet.com/news/fbi-nabs-alleged-hackers-in-theft-of-15m-credit-cards-from-chipotle-others/?ftag=CMG-01-10aaa1b.

[22] *See, e.g.*, Michael Hill and Dan Swinhoe, *The 15 Biggest Data Breaches of the 21st Century*, CSO ONLINE (Nov. 8, 2022), https://www.csoonline.com/article/2130877/the-biggest-data-breaches-of-the-21st-century.html.

82. The number of data breach victims has surpassed 1 billion for the first half of 2024, according to the Identity Theft Resource Center.[23]

83. Defendants should certainly have been aware, and indeed were aware, that they were at risk of a data breach that could expose the PII that it collected and maintained.

84. Defendants were clearly aware of the risks they were taking and the harm that could result from inadequate data security but threw caution to the wind.

85. As a custodians of Private Information, Defendants knew, or should have known, the importance of safeguarding the Private Information entrusted to them by Plaintiffs and Class members, and of the foreseeable consequences if their data security systems were breached, including the significant costs imposed on Plaintiffs and Class Members as a result of a breach.

86. Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the Private Information of Plaintiffs and Class Members from being compromised.

87. At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiffs and Class Members and of the foreseeable consequences that would occur if Marquis data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

---

[23] https://www.usatoday.com/story/money/2024/07/18/data-breach-what-to-do/74441060007/.

21

88.     WesBanco was, or should have been, fully aware of the unique type and the significant volume of its customers' Private Information stored and maintained with its third-party vendor Marquis's server, and, thus, the thousands of individuals who would be harmed by the unauthorized exposure of that unencrypted data in a breach.

89.     Given the nature of the Data Breach, it was foreseeable that Plaintiffs' and Class Members' Private Information compromised therein would be targeted by hackers and cybercriminals for use in variety of different injurious ways. Indeed, the cybercriminals who possess Plaintiffs' and Class Members' Private Information can easily obtain their tax returns or open fraudulent credit card accounts in Plaintiffs' and Class Members' names.

90.     As a company in possession of Private Information, Defendants knew, or should have known, the importance of safeguarding the Private Information entrusted to them by Plaintiffs and Class Members and of the foreseeable consequences if their data security systems were breached. This includes the significant costs imposed on Plaintiffs and Class Members as a result of a breach. Nevertheless, Defendants failed to take adequate cybersecurity measures to prevent the Data Breach.

91.     Plaintiffs and Class Members were the foreseeable and probable victims of Defendants' inadequate security practices and procedures. The breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Plaintiffs and Class Members especially vulnerable to identity theft, medical and financial fraud, and the like.

**E.      Defendants Could Have Prevented the Data Breach**.

92.      Data breaches are preventable.[24] As Lucy Thompson wrote in the DATA
BREACH AND ENCRYPTION HANDBOOK, "In almost all cases, the data breaches that
occurred could have been prevented by proper planning and the correct design and
implementation of appropriate security solutions."[25] she added that "[o]rganizations that
collect, use, store, and share sensitive personal data must accept responsibility for
protecting the information and ensuring that it is not compromised . . . ."[26]

93.      "Most of the reported data breaches are a result of lax security and the failure
to create or enforce appropriate security policies, rules, and procedures. . . . Appropriate
information security controls, including encryption, must be implemented and enforced in
a rigorous and disciplined manner so that a *data breach never occurs*."[27]

94.      In a data breach like this, many failures laid the groundwork for the Breach.

95.      The FTC has published guidelines that establish reasonable data security
practices for businesses.

---

[24] Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in*
DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012), available at
https://lawcat.berkeley.edu/record/394088.
[25] *Id.* at 17.
[26] *Id.* at 28.
[27] *Id.*

96. The FTC guidelines emphasize the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.[28]

97. The FTC guidelines establish that businesses should protect the confidential information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems.

98. The FTC guidelines also recommend that businesses utilize an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating hacking attempts; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

99. According to information and belief, Defendants failed to maintain many reasonable and necessary industry standards necessary to prevent a data breach, including the FTC's guidelines.

100. Marquis failed to comply with FTC guidelines regarding data security and WesBanco failed to ensure that its third-party vendor in possession of its clients' Private Information had adequate security safeguards to prevent unauthorized parties from accessing and exfiltrating Private Information, like the present case.

---

[28] *Protecting Personal Information: A Guide for Business*, FTC, available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

101.   Upon information and belief, Defendants also failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework, NIST Special Publications 800-53, 53A, or 800-171; the Federal Risk and Authorization Management Program (FEDRAMP); or the Center for Internet Security's Critical Security Controls (CIS CSC), which are well respected authorities in reasonable cybersecurity readiness.

102.   As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[29]

103.   To prevent the Data Breach, Marquis could and should have implemented, and WesBanco should have ensured Marquis implemented,  as recommended by the Federal Bureau of Investigation, the following measures:

- Implement an awareness and training program.  Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting

---

[29] *See* How to Protect Your Networks from RANSOMWARE, at 3, available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view.

and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[30]

104.    Further, Marquis could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**.  Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

---

[30] *Id.* at 3–4.

- **Use caution with links and when entering website addresses**.  Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**.  Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**.  If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**.  Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working

28

Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[31]

105.    In addition, Defendants could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

- **Secure internet-facing assets**

  - Apply latest security updates

  - Use threat and vulnerability management

  - Perform regular audit; remove privileged credentials

- **Thoroughly investigate and remediate alerts**

  - Prioritize and treat commodity malware infections as potential full compromise;

- **Include IT Pros in security discussions**

---

[31] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), available at https://www.cisa.gov/news-events/news/protecting-against-ransomware.

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

- **Build credential hygiene**

  - Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

- **Apply principle of least-privilege**

  - Monitor for adversarial activities

  - Hunt for brute force attempts

  - Monitor for cleanup of Event Logs

  - Analyze logon events

- **Harden infrastructure**

  - Use Windows Defender Firewall

  - Enable tamper protection

  - Enable cloud-delivered protection

  - Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[32]

106.    Given that WesBanco provided Marquis with Private Information of its

---

[32] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/.

customers and Marquis was storing the PII of thousands of individuals, Defendants could have and should have implemented all of the above measures to prevent and detect cyberattacks and ensure that Marquis followed FTC and industry standard practices for data security.

107.    Specifically, among other failures, Marquis had far too much confidential unencrypted information held on their systems and WesBanco did not ensure that Marquis implemented adequate security safeguards.  Such PII should have been segregated into an encrypted system.[33]

108.    Moreover, it is a well-established industry standard practice for a business to dispose of confidential PII once it is no longer needed.

109.    The FTC, among others, has repeatedly emphasized the importance of disposing unnecessary PII, saying simply: "Keep sensitive data in your system only as long as you have a business reason to have it.  Once that business need is over, properly dispose of it.  If it's not on your system, it can't be stolen by hackers."[34]  Defendants, rather than following this basic standard of care, kept thousands of individuals' unencrypted PII indefinitely.

110.    In sum, the Data Breach could have readily been prevented through the use of industry standard network segmentation and encryption of all PII.

---

[33] *See, e.g.,* Adnan Raja, *How to Safeguard Your Business Data with Encryption*, FORTRA (Aug. 14, 2018), https://digitalguardian.com/blog/how-safeguard-your-business-data-encryption.

[34] *Protecting Personal Information: A Guide for Business*, FTC,  *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf, at p. 6.

111.    Marquis failed to follow FTC guidelines and industry standards for safeguarding and protecting the PII of Plaintiffs and Class Members against unauthorized disclosures to third parties. Further, WesBanco failed to ensure that Marquis followed FTC guidelines and industry standards for safeguarding the Private Information of Plaintiffs and Class Members.

112.    Further, the scope of the Data Breach could have been dramatically reduced had Defendants utilized proper record retention and destruction practices.

**F. Common Injuries and Damages.**

113.    As a result of Defendants' ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiffs and Class Members has materialized and is imminent, and Plaintiffs and Class Members have all sustained actual injuries and damages, including: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect the Private Information.

32

**G. Loss of Time to Mitigate the Risks of Fraud and Identity Theft.**

114.    As a result of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet the asset of time has been lost.

115.    Due to the actual and imminent risk of identity theft, Plaintiffs and Class Members must monitor their financial accounts for many years to mitigate that harm.

116.    Plaintiffs and Class Members have spent time, and will spend additional time in the future, on a variety of prudent actions, such as placing freezes and alerts with credit reporting agencies, contacting financial institutions, closing or modifying financial accounts, changing passwords, reviewing and monitoring credit reports and accounts for unauthorized activity, and filing police reports, which may take years to discover.

117.    These efforts are consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.

118.    Once Private Information is exposed, there is virtually no way to ensure that

33

the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiffs and Class Members will need to maintain these heightened measures for years, and possibly their entire lives, as a result of Defendants' conduct that caused the Data Breach.

### H. Plaintiffs' Individual Experience.

*Plaintiff Cheryl Fannin*

119.    Plaintiff Fannin is a customer of WesBanco. Upon information and belief, WesBanco collected Plaintiff Fannin's PII and provided it to Marquis. Upon information and belief, Plaintiffs is a victim of the Data Breach.

120.    Plaintiff Fannin was required to provide her Private Information to WesBanco as part of WesBanco business practices. In turn, WesBanco provided Plaintiff Fannin's PII to store, maintain, and protect.

121.    WesBanco and Marquis were in possession of Plaintiff Fannin's Private Information before, during, and after the Data Breach.

122.    At the time of the Data Breach, WesBanco service provider Marquis retained Plaintiff Fannin's Private Information on their network systems with inadequate data security, causing Plaintiff Fannin's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

123.    Because of the Data Breach, there is no doubt Plaintiff Fannin's highly confidential Private Information is in the hands of cybercriminals. Reason being, the *modus operandi* of cybercriminals is to steal data they can exploit by selling on the dark web. As such, Plaintiff Fannin and the Class are at an imminent risk of identity theft and fraud.

34

124.   As a result of the Data Breach, Plaintiff Fannin estimates she has already expended hours of her time mitigating the harms of the Data Breach and will need to do so on a weekly basis. As such, Plaintiff Fannin has suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including investigating the Data Breach, investigating how best to ensure that she is protected from identity theft, and reviewing account statements, credit reports, and/or other information.

125.   Plaintiff Fannin places significant value on the security of her Private Information and does not readily disclose it. Plaintiff Fannin has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source.

126.   Upon information and belief, Plaintiff Fannin has noticed a significant uptick in spam emails, phone calls, and text messages which she did not receive prior to the Breach.

127.   Plaintiff Fannin has been and will continue to be at a heightened and substantial risk of future identity theft and their attendant damages for years to come. Such a risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the Private Information compromised by the Data Breach.

128.   Knowing that thieves intentionally targeted and accessed her Private Information, including her Social Security number, has caused Plaintiff Fannin great anxiety beyond mere worry.

129.    The Data Breach has caused Plaintiff Fannin to suffer fear, anxiety, and stress, which has been compounded by Defendants' delay in noticing her of the fact that her Private Information was accessed and/or acquired by criminals as a result of the Data Breach.

130.    Plaintiffs Brown has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in the possession of Defendants, is protected, and safeguarded from future data breaches. Absent Court intervention, Plaintiff Fannin's and the Class's Private Information will be wholly unprotected and at-risk of future data breaches.

131.    Plaintiff Fannin has suffered injuries directly and proximately caused by the Data Breach, including: (i) theft of her valuable Private Information; (ii) the imminent and certain impending injury flowing from anticipated fraud and identity theft posed by her Private Information being placed in the hands of cybercriminals; (iii) damages to and diminution in value of her Private Information that was entrusted to Defendants with the understanding that Defendants would safeguard this information against disclosure; (iv) loss of the benefit of the bargain with Defendants to provide adequate and reasonable data security—*i.e.*, the difference in value between what Plaintiff should have received from WesBanco and Marquis defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect her Private Information; and (v) continued risk to her Private Information, which remains in the possession of Defendants and which is subject to further breaches so long as Defendants

fails to undertake appropriate and adequate measures to protect the Private Information that was entrusted to Defendants.

**Plaintiff Evee Malone**

132.    Plaintiff Malone is a customer of WesBanco. Upon information and belief, WesBanco collected Plaintiff Malone's PII and provided it to Marquis. Upon information and belief, Plaintiffs is a victim of the Data Breach.

133.    Plaintiff Malone was required to provide her Private Information to WesBanco as part of WesBanco business practices. In turn, WesBanco provided Plaintiff Malone's PII to store, maintain, and protect.

134.    WesBanco and Marquis were in possession of Plaintiff Malone's Private Information before, during, and after the Data Breach.

135.    At the time of the Data Breach, WesBanco service provider Marquis retained Plaintiff Malone's Private Information on their network systems with inadequate data security, causing Plaintiff Malone's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

136.    Because of the Data Breach, there is no doubt Plaintiff Malone's highly confidential Private Information is in the hands of cybercriminals. Reason being, the *modus operandi* of cybercriminals is to steal data they can exploit by selling on the dark web. As such, Plaintiff Malone and the Class are at an imminent risk of identity theft and fraud.

137.    As a result of the Data Breach, Plaintiff Malone estimates she has already expended hours of her time mitigating the harms of the Data Breach and will need to do so on a weekly basis. As such, Plaintiff Malone has suffered loss of productivity from taking

time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including investigating the Data Breach, investigating how best to ensure that she is protected from identity theft, and reviewing account statements, credit reports, and/or other information.

138. Plaintiff Malone places significant value on the security of her Private Information and does not readily disclose it. Plaintiff Malone has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source.

139. Upon information and belief, Plaintiff Malone has noticed a significant uptick in spam emails, phone calls, and text messages which she did not receive prior to the Breach.

140. Plaintiff Malone has been and will continue to be at a heightened and substantial risk of future identity theft and their attendant damages for years to come. Such a risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the Private Information compromised by the Data Breach.

141. Knowing that thieves intentionally targeted and accessed her Private Information, including her Social Security number, has caused Plaintiff Malone great anxiety beyond mere worry.

142. The Data Breach has caused Plaintiff Malone to suffer fear, anxiety, and stress, which has been compounded by Defendants' delay in noticing her of the fact that her Private Information was accessed and/or acquired by criminals as a result of the Data Breach.

143.    Plaintiffs Malone has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in the possession of Defendants, is protected, and safeguarded from future data breaches. Absent Court intervention, Plaintiff Malone's and the Class's Private Information will be wholly unprotected and at-risk of future data breaches.

144.    Plaintiff Malone has suffered injuries directly and proximately caused by the Data Breach, including: (i) theft of her valuable Private Information; (ii) the imminent and certain impending injury flowing from anticipated fraud and identity theft posed by her Private Information being placed in the hands of cybercriminals; (iii) damages to and diminution in value of her Private Information that was entrusted to Defendants with the understanding that Defendants would safeguard this information against disclosure; (iv) loss of the benefit of the bargain with Defendants to provide adequate and reasonable data security—*i.e.*, the difference in value between what Plaintiffs Malone should have received from WesBanco and Marquis defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect her Private Information; and (v) continued risk to her Private Information, which remains in the possession of Defendants and which is subject to further breaches so long as Defendants fails to undertake appropriate and adequate measures to protect the Private Information that was entrusted to Defendants.

## V.    CLASS ACTION ALLEGATIONS

145.    Plaintiffs incorporate by reference all preceding paragraphs as if fully restated here.

146.    Plaintiffs bring this action against Defendants on behalf of themselves, and all other individuals similarly situated under Federal Rule of Civil Procedure 23. Plaintiffs assert all claims on behalf of a nationwide class (the "Class") defined as follows:

> **All persons whose PII was compromised in the Data Breach, including all individuals who were sent a Notice Letter after the Data Breach.**

147.    Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff.

148.    Plaintiffs reserve the right to amend the above definition or to propose subclasses in subsequent pleadings and motions for class certification.

149.    Plaintiffs anticipate the issuance of notice setting forth the subject and nature of the instant action to the proposed Class. Upon information and belief, Defendants' own business records or electronic media can be utilized for the notice process.

150.    The proposed Class meets the requirements of Federal Rule of Civil Procedure 23.

151.    **Numerosity:** The proposed Class is so numerous that joinder of all members is impracticable. Although the true number of affected individuals is unknown to Plaintiffs, it is estimated that the Breach affected at least hundreds if not thousands of individuals. The number of affected individuals may be obtained by Defendants' records.

152.    **Typicality:** Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all members of the Class were injured through Defendants' uniform misconduct. Defendants' inadequate data security gave rise to Plaintiffs' claims and are identical to those that give rise to the claims of every other Class member because Plaintiffs and each member of the Class had their sensitive PII compromised in the same way by the same conduct of Defendants.

153.    **Adequacy:** Plaintiffs is an adequate representative of the Class because Plaintiffs' interests do not conflict with the interests of the Class; Plaintiffs have retained counsel competent and highly experienced in data breach class action litigation; and Plaintiffs and Plaintiffs' counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

154.    **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for members of the Class individually to effectively redress Defendants' wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and

provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

155. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a. Whether Defendants engaged in the wrongful conduct alleged herein;

b. Whether Defendants failed to adequately safeguard Plaintiffs' and the Class's PII;

c. Whether Defendants owed a duty to Plaintiffs and the Class to adequately protect their PII, and whether it breached this duty;

d. Whether Defendants breached their duties to Plaintiffs and the Class;

e. Whether Defendants failed to provide adequate cyber security;

f. Whether Defendants knew or should have known that their computer and network security systems were vulnerable to cyber-attacks;

g. Whether Defendants' conduct, including their failure to act, resulted in or was the proximate cause of the breach of their company network;

h. Whether Defendants were negligent in permitting unencrypted PII off vast numbers of individuals to be stored within their network;

i. Whether WesBanco failed to ensure its vendor, Marquis, implemented and maintained reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

42

j.   Whether Defendants were negligent in failing to adhere to reasonable retention policies, thereby greatly increasing the size of the Data Breach;

k.   Whether Defendants breached implied contractual duties to Plaintiffs and the Class to use reasonable care in protecting their PII;

l.   Whether Defendants failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiffs and the Class;

m.   Whether Defendants continues to breach duties to Plaintiffs and the Class;

n.   Whether Plaintiffs and the Class suffered injury as a proximate result of Defendants' negligent actions or failures to act;

o.   Whether Plaintiffs and the Class are entitled to recover damages, equitable relief, and other relief; and

p.   Whether Defendants' actions alleged herein constitute gross negligence, and whether Plaintiffs and Class Members are entitled to punitive damages.

156.   The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of

conduct to which Plaintiffs was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

157.    The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

158.    Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

159.    **Policies Generally Applicable to the Class.** This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief and corresponding declaratory relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE
### (On Behalf of Plaintiffs and the Class)

160.    Plaintiffs re-allege and incorporates by reference all preceding factual

paragraphs as though fully set forth herein.

161.   WesBanco solicited, gathered, and stored the Private Information of Plaintiffs and Class Members. Marquis solicited, gathered, and stored the Private information of Plaintiffs and Class Members through WesBanco.

162.   Upon accepting and storing the Private Information of Plaintiffs and Class Members on their computer systems and networks, Defendants undertook and owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information of Plaintiffs and the Class from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

163.   WesBanco had the duty to ensure its vendor, Marquis, had adequate security safeguards to protect Plaintiffs' and Class Members' Private Information. Marquis had the duty to ensure it complied with FTC and industry standards practices related to protecting highly sensitive PII.

164.   In the course of their contract with their service provider Marquis, WesBanco provided Marquis with Plaintiffs' and Class Members' Private Information.

165.   WesBanco had full knowledge of the sensitivity of the Private Information entrust to it and shared with Marquis, and the types of harm that Plaintiffs and Class Members could and would suffer if the Private Information was wrongfully disclosed. Plaintiffs and Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiffs and the Class Members had no ability to protect their Private

Information that was in Defendants' possession. As such, a special relationship existed between Defendants and Plaintiffs and the Class.

166.    Because of this special relationship, Defendants required Plaintiffs and Class Members to provide their Private Information, including names, Social Security numbers, and other Private Information.

167.    Implied in these exchanges was a promise by Defendants to ensure that the Private Information of Plaintiffs and Class Members in their possession was only used for the provided purpose and that Defendants would destroy any Private Information that it was not required to maintain.

168.    By collecting, storing, and sharing Plaintiffs' and Class Members' Private Information, WesBanco had a duty of care to require and ensure Marquis used reasonable means to secure and safeguard it, prevented disclosure of the information, and safeguarded the Private Information from theft.

169.    As part of this special relationship, Defendants had a duty to perform with skill, care, and reasonable expedience and faithfulness.

170.    Through Defendants' acts and omissions, including Defendants' failure to provide adequate data security, their failure to protect Plaintiffs' and Class Members' Private Information from being foreseeably accessed, and their improper retention of Private Information it was not required to maintain, Defendants negligently failed to observe and perform their duty.

171.    WesBanco duty of care obligated it to require and ensure Marquis implemented processes by which it could detect if their network was breached or if Private

Information was exposed to unauthorized actors.

172.    WesBanco duty of care further obligated it to ensure Marquis's processes were sufficient to detect unauthorized access to their network or compromises of Private Information stored therein.

173.    By accepting, collecting, and storing WesBanco customers' Private Information, Marquis took on the obligation and duty to safeguard the highly sensitive Private Information from unauthorized disclosures, but failed to do so.

174.    Plaintiffs and Class Members did not receive the benefit of the bargain with Defendants, because providing their Private Information was in exchange for Defendants' implied agreement to secure and keep it safe and to delete it once no longer required.

175.    WesBanco was in a position to ensure its vendor Marquis's data security procedures were sufficient to protect against the foreseeable risk of harm to Plaintiffs and Class Members from a cybersecurity event like this Data Breach, whereas Plaintiffs and Class Members were not.

176.    Marquis was aware of the fact that cybercriminals routinely target companies and corporations through cyberattacks in an attempt to steal Private Information. In other words, Marquis knew of a foreseeable risk to their data security systems but failed to implement reasonable security measures.

177.    Defendants owed Plaintiffs and the Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiffs and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard or delete such data and providing notification to Plaintiffs and the

Class Members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

178. Defendants' duty extended to protecting Plaintiffs and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B.

179. Defendants had duties to protect and safeguard the Private Information of Plaintiffs and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive Private Information. Additional duties that Defendants owed Plaintiffs, and the Class include:

a.  To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendants' networks, systems, email accounts, protocols, policies, procedures and practices to ensure that Plaintiffs' and Class Members' Private Information was adequately secured from impermissible release, disclosure, and publication;

b.  To protect Plaintiffs' and Class Members' Private Information in their possession by using reasonable and adequate security procedures and systems;

c.  To ensure that their vendor implemented FTC and industry standard security measures to protect the Private Information;

d.  To implement processes to quickly detect a data breach, security incident, or

48

intrusion involving their networks, email accounts, and servers; and

e.      To promptly notify Plaintiffs and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Private Information.

180.    Plaintiffs and the Class were the intended beneficiaries of Defendants' duties, creating a special relationship between them and Defendants. WesBanco was in a position to ensure that its vendor's systems were sufficient to protect the Private Information that Plaintiffs and the Class had entrusted to it.

181.    Had WesBanco complied with the Safeguards Rule and ensured Marquis implemented data security protocols, the consequences of the Data Breach could have been avoided, or at least significantly reduced as the Data Breach could have been detected earlier, the amount of Private Information compromised could have been greatly reduced.

182.    Defendants' violations of the FTC Act and the Safeguards Rule as described herein directly caused and/or were a substantial factor in the Data Breach and resulting injuries to Plaintiffs and Class Members.

183.    Plaintiffs' injuries and damages, as described herein, are a reasonably certain consequence of Defendants' negligence and breach of their duties.

184.    Defendants breached their duties of care by failing to adequately protect Plaintiffs' and Class Members' Private Information. Defendants breached their duties by, among other things:

a.      Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, and protecting the Private Information in their possession;

49

b.     Failing to protect the Private Information in their possession using reasonable and adequate security procedures and systems;

c.     Failing to ensure that their vendor had adequate security measures to protect Plaintiffs' and Class Members' Private Information;

d.     Failing to consistently enforce security policies aimed at protecting Plaintiffs and the Class's Private Information;

e.     Failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

f.     Failing to promptly notify Plaintiffs and Class Members of the Data Breach that affected their Private Information.

185.    Defendants' willful failure to abide by these duties was wrongful, reckless, and grossly negligent considering the foreseeable risks and known threats.

186.    As a direct and proximate result of Defendants' negligent conduct, including but not limited to their failure to implement and maintain reasonable data security practices and procedures as described above, Plaintiffs and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

187.    Through Defendants' acts and omissions described herein, including but not limited to Defendants' failure to protect the Private Information of Plaintiffs and Class Members from being stolen and misused, Defendants unlawfully breached their duty to use reasonable care to adequately protect and secure the Private Information of Plaintiffs and Class Members while it was within Defendants' possession and control.

188.    Further, through their failure to provide timely and clear notification of the Data Breach to Plaintiffs and Class Members, Defendants prevented Plaintiffs and Class Members from taking meaningful, proactive steps to secure their Private Information and mitigating damages.

189.    Plaintiffs and Class Members could have taken actions earlier had they been timely notified of the Data Breach.

190.    Plaintiffs and Class Members could have enrolled in credit monitoring, could have instituted credit freezes, and could have changed their passwords, among other things, had they been alerted to the Data Breach more quickly.

191.    Plaintiffs and Class Members have suffered harm from the delay in notifying them of the Data Breach.

192.    Plaintiffs and Class Members are within the class of persons the FTC Act and the Safeguards Rule were intended to protect.

193.    The type of harm that resulted from the Data Breach was the type of harm the FTC Act and the Safeguards Rule were intended to guard against.

194.    Marquis failure to comply with, and WesBanco failure to ensure its third-party vendor complied with, the FTC Act and the Safeguards Rule is negligence per se.

195.    Defendants' duties to use reasonable care in protecting Plaintiffs' and Class Members' Private Information arose not only as a result of the statutes and regulations described above, but because Defendants is bound by industry standards to secure such Private Information.

196.    But for Defendants' wrongful and negligent breaches of duties owed to Plaintiffs and Class Members, the Data Breach would not have occurred or at least would have been mitigated, Plaintiffs' and Class Members' Private Information would not have been compromised, and Plaintiffs' and Class Members' injuries would have been avoided.

197.    It was foreseeable that Defendants' failures to use reasonable measures to protect Plaintiffs' and Class Members' Private Information would injure Plaintiffs and Class Members. Further, the breach of security was reasonably foreseeable to Defendants given the known high frequency of cyber-attacks and data breaches in Defendants' industry.

198.    It was therefore foreseeable that the failure to adequately safeguard Plaintiffs' and Class Members' Private Information would cause them one or more types of injuries.

199.    As a direct and proximate cause of Defendants' conduct, including but not limited to their failure to implement and maintain reasonable security practices and procedures, Plaintiffs and Class Members have suffered, as Plaintiffs have, and/or will suffer injury and damages, including but not limited to: (i) the loss of the opportunity to determine for themselves how their Private Information is used; (ii) the publication and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information, including the need for substantial credit monitoring and identity protection services for an extended period of time; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to

mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from tax fraud and identity theft; (v) costs associated with placing freezes on credit reports and password protections; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fails to undertake appropriate and adequate measures to protect the Private Information of their Client's customers in their continued possession; and (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Private Information for the rest of their lives. Thus, Plaintiffs and the Class are entitled to damages in an amount to be proven at trial.

200.   The damages Plaintiffs and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendants' negligent conduct.

201.   Plaintiffs and the Class have suffered injury and are entitled to actual and punitive damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**
**<u>(On Behalf of Plaintiffs and the Class)</u>**

202.   Plaintiffs re-allege and incorporates by reference all preceding factual paragraphs as though fully set forth herein.

203.   Defendants required Plaintiffs and Class Members to provide and entrust their Private Information to Defendants as a condition of obtaining Defendants' services.

204.    Plaintiffs and the Class Members entered into implied contracts with Defendants under which Defendants agreed to safeguard and protect their Private Information and to timely and accurately notify Plaintiffs and Class Members that their information had been breached and compromised.

205.    At the time Defendants acquired the PII of Plaintiffs and the Class, there was a meeting of the minds and a mutual understanding that Defendants would safeguard the PII and not take unjustified risks when storing the PII.

206.    WesBanco entered into implied contracts with Plaintiffs and Class Members by collecting their Private Information and promising to safeguard it against unauthorized disclosures. Marquis entered into implied contracts with Plaintiffs and Class members by accepting, collecting, storing, and maintaining the Private Information given to it by WesBanco in exchange for safeguarding the Private Information from unauthorized disclosures. Both Marquis and WesBanco breached the implied contracts with Plaintiffs and Class Members by failing to protect their Private Information from cybercriminals.

207.    The valid and enforceable implied contracts that Plaintiffs and Class Members entered into with Defendants included Defendants' promises to protect Private Information it collected from Plaintiffs and Class Members, or created on their own, from unauthorized disclosures through reasonable and legally compliant safeguards. Plaintiffs and Class Members provided this Private Information in reliance on Defendants' promises.

208.    Defendants promised and warranted to Plaintiffs and Class Members, to maintain the privacy and confidentiality of the Private Information Defendants' collected from Plaintiffs and Class Members and to keep such information safeguarded against

unauthorized access and disclosure.

209.    Defendants' adequate protection of Plaintiffs' and Class Members' Private Information was a material aspect of these implied contracts.

210.    Plaintiffs and Class Members conferred a monetary benefit on Defendants in that Plaintiffs and Class Members were required to pay Defendants for services, a portion of which should have been specifically allocated towards adequate data security.

211.    Without the Private Information provided by Plaintiffs and Class Members, Defendants could not derive revenue from their regular business activities. A portion of the revenue derived from the services provided to Plaintiffs and Class Members was to be used to provide a reasonable level of data security and reasonable data security practices. The amount of revenue to be allocated to data security is known to Defendants.

212.    Defendants accepted possession of Plaintiffs' and Class Members' Private Information for the purpose of providing goods and services and implicitly agreed to protect their Private Information from data breaches and keep it confidential and secured.

213.    The implied promise included consideration beyond those pre-existing general duties owed under state and federal regulations. The additional consideration included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines and industry standards on data security.

214.    The implied promises include but are not limited to: (1) taking steps to ensure that any agents who are granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of their agents is restricted and limited to achieve an authorized

55

purpose; (3) restricting access to qualified and trained agents; (4) designing and implementing appropriate retention policies to protect the Private Information against data breaches; (5) applying or requiring proper encryption; (6) multifactor authentication for access; and (7) other steps to protect against foreseeable data breaches.

215.    Based on this implicit understanding, Plaintiffs and Class Members accepted Defendants' offers and provided Defendants with their Private Information to obtain good and services and employment.

216.    Plaintiffs and Class Members would not have permitted their Private Information to be collected and stored by WesBanco had they known that WesBanco third-party vendor, Marquis, would not safeguard their Private Information, as promised, or provide timely notice of a data breach.

217.    Plaintiffs and Class Members fully performed their obligations under their implied contracts with Defendants.

218.    Defendants materially breached the implied contracts by failing to safeguard Plaintiffs' and Class Members' Private Information, by failing to adhere to FTC guidelines and industry standards, by ensuring that their vendor Marquis had adequate safeguards to protect the Private Information, and by failing to provide Plaintiffs and Class Members with timely and accurate notice of the Data Breach.

219.    As a result of Defendants' failures to fulfill the data security protections promised, Plaintiffs and Class Members did not receive the full benefit of their bargains with Defendants, and instead received services of a diminished value compared to that described in the implied contracts. Plaintiffs and Class Members were therefore damaged

in an amount at least equal to the difference in the value of the services with data security protection they paid for and that which they received.

220.    As a direct and proximate result of Defendants' breach of their implied contracts with Plaintiffs and Class Members and the consequential Data Breach, Plaintiffs and Class Members have suffered injuries and damages as set forth herein and have been irreparably harmed, as well as suffering and the loss of the benefit of the bargain they struck with Defendants

221.    Upon information and belief, Defendants have not provided Plaintiffs and the Class with information regarding the root cause of the Data Breach and the steps Defendants is taking to ensure that the Private Information remains safe and protected from further disclosures.

222.    The losses and damages Plaintiffs and Class Members sustained (as described above) were the direct and proximate result of Defendants' breach of their implied contracts with Plaintiffs and Class Members.

223.    Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or restitution, in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT
### <u>(On Behalf of Plaintiffs and the Class)</u>

224.    Plaintiffs re-allege and incorporates by reference all preceding factual paragraphs as though fully set forth herein.

225.    Plaintiffs allege this claim in the alternative of their Breach of Implied Contract claim.

226.    Defendants knew that Plaintiffs and Class Members conferred a benefit upon them and accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendants profited from Plaintiffs' retained data and commercialized and used Plaintiffs' and Class Members' Private Information for business purposes.

227.    Upon information and belief, Defendants fund their data security measures entirely from their general revenue, including payments on behalf of or for the benefit of Plaintiffs and Class Members.

228.    As such, a portion of the payments made for the benefit of or on behalf of Plaintiffs and Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendants.

229.    Defendants failed to secure Plaintiffs' and Class Members' Private Information and, therefore, did not fully compensate Plaintiffs or Class Members for the value that their Private Information provided.

230.    Defendants acquired the Private Information through inequitable means as

they failed to disclose the inadequate data security practices previously alleged. If Plaintiffs and Class Members had known that Defendants would not fund adequate data security practices, procedures, and protocols to sufficiently monitor, supervise, and secure their Private Information, they would not have entrusted their Private Information to WesBanco, and Marquis through WesBanco, nor would have obtained services from Defendants.

231.    Defendants enriched themselves by saving the costs it reasonably should have expended on data security measures, including measures to adequately supervise Marquis's cybersecurity, while profiting from sharing and using that same PII. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants calculated to increase their own profits at the expense of Plaintiffs and Class Members by permitting Marquis to use cheaper, ineffective security measures, and diverting those funds to Defendants' own pockets.

232.    Plaintiffs and Class Members have no adequate remedy at law.

233.    Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' decision to prioritize their own profits over the requisite security and the safety of customers' Private Information

234.    Under the circumstances, it would be unjust for Defendants to be permitted to retain any of the benefits that Plaintiffs and Class Members conferred upon it.

235.    WesBanco derived a monetary benefit from Plaintiffs and Class Members through the collection of Private Information in exchange for services. Marquis derived a monetary benefit from Plaintiffs and Class Members through WesBanco using Marquis as its third-party vendor to maintain, store, and protect the Private Information.

236.    As a direct and proximate result of Defendants' conduct, Plaintiffs and other Class Members, have suffered actual harm in the form of experiencing specific acts of fraudulent activity and other attempts of fraud that required Plaintiffs' efforts to prevent from succeeding.

237.    As a result of Defendants' wrongful conduct, as alleged above, Plaintiffs and the Class are entitled to restitution and disgorgement of profits, benefits, and other compensation obtained by Defendants and all other relief allowed by law.

## VII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs and the Class pray for judgment against Defendants as follows:

a.  An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Class requested herein;

b.  A judgment in favor of Plaintiffs and the Class awarding them appropriate monetary relief, including compensatory damages, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper;

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

    d.  An order requiring Defendants to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

    e.  A judgment in favor of Plaintiffs and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

    f.  An award of such other and further relief as this Court may deem just and proper.

## VIII. <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all appropriate issues raised in this Class Action Complaint.

Dated: December 23, 2025            Respectfully submitted,

                                    */s/: William B. Federman*
                                    William B. Federman
                                    Tex. Bar No. 00794935
                                    Jessica W. Wilkes
                                    **FEDERMAN & SHERWOOD**
                                    4131 N. Central Expressway, Ste. 900
                                    Dallas, TX 75204
                                    T: (800) 237-1277
                                    E: wbf@federmanlaw.com
                                    E: jaw@federmanlaw.com

                                    ***Counsel for Plaintiffs and the Putative Class***